544 So.2d 1188 (1989)
STATE of Louisiana
v.
Elmo E. HUMPHREY, III.
No. 89-KA-33.
Court of Appeal of Louisiana, Fifth Circuit.
May 10, 1989.
John M. Mamoulides, Dist. Atty., Ronald Gracianette, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, La., for plaintiff/appellee.
Bruce G. Whittaker, Gretna, La., for defendant/appellant.
Before KLIEBERT, BOWES and WICKER, JJ.
WICKER, Judge.
Elmo Humphrey appeals his conviction and sentence for aggravated rape, La.R.S. 14:42(A)(4), of the child whose care was entrusted to him. We affirm.
Elmo Humphrey was employed by Kathy Calhoun to babysit with her daughter, J.M., from early 1980 until March 1982, when the family moved from Metairie to New Orleans. J.M. was born October 20, 1971, making her nine years old when Humphrey began molesting her. The sexual activity continued for two years, until J.M. was eleven and Humphrey in his late twenties. In 1987, when she was sixteen years old, J.M. told her mother about the sexual abuse, resulting in Humphrey's indictment for violation of La.R.S. 14:42(A)(4).
*1189 Humphrey pleaded not guilty; and an eleven-to-one jury found him guilty. The trial judge sentenced him to life imprisonment at hard labor, without benefit of parole, pardon or suspension of sentence, with credit for time served.
Humphrey claims that the trial judge erred in failing to grant him a mistrial based upon the prosecutor's reference in opening statement to an alleged inculpatory statement, in refusing to allow him to question J.M. about gynecological examinations she may have had during the time in question, in prohibiting him from questioning J.M. about her use of drugs and mental state during the time in question, and in giving to the jury a constitutionally defective charge on reasonable doubt.
ASSIGNMENT OF ERROR # 1
During investigation Detective Ferd Herbert of the Jefferson Parish Sheriff's Office questioned Humphrey. The prosecutor during opening statement remarked:
Finally, you will hear from Detective Ferd Hebert. He's an investigator with the Jefferson Parish Sheriff's Office. He'll testify that he conducted an investigation of this case, took statements from all parties. And he took the statement of Mr. Elmo Humphrey, which I think you will find interesting.
Humphrey's counsel moved for a mistrial, citing La.C.Cr.P. art. 767: "The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant." The trial judge denied the mistrial, ruling
.... Counsel for the defendant alleges that this wasthat the statement made by the defendant is inculpatory. I find that the remark did not refer to the defendant's statement as inculpatory, in fact, the defendant denied the crime of aggravated rape in the statement. And accordingly, I deny the motion on that ground.
The prosecution stipulated prior to trial that it did not intend to use the recording of the statement itself but made it available to counsel for Humphrey. The state attempted to introduce a transcription of the statement during trial, and Humphrey's counsel objected. The state then withdrew the statement.
The purpose of the statutory scheme of La.C.Cr.P. arts. 766 to 768 relative to opening statements, confessions and notice to defendant prior to opening statement is to prevent surprise and allow adequate time for preparation of the defense, as well as to avoid certain problems that had been attendant to mentioning of confessions or inculpatory statements in the State's opening statement. State v. Parker, 436 So.2d 495, 499 (La.1983); State v. Russell, 416 So.2d 1283 (La.1982).
The record of this case fails to reflect that defense counsel was surprised or defendant prejudiced by the opening statement of the prosecuting attorney.
We have reviewed the statement and believe the trial judge was correct in his characterization of the statement as non-inculpatory. "[T]he term `inculpatory statement' refers to the out-of-court admission of incriminating facts made by a defendant after the crime has been committed." State v. Labostrie, 358 So.2d 1243, 1248 (La.1978). Accord: State v. Hernandez, 503 So.2d 1181 (La.App. 3rd Cir.1987). Humphrey's statement is a denial of wrongdoing and not an admission of incriminating facts. The statement does establish his presence in J.M.'s home during the time the abuse occurred, but these facts were brought out during the presentation of the defense by testimony of Humphrey's mother and father.
Even if the statement in question were an inculpatory one, reference to it does not mandate a mistrial.
Article 770 of the Louisiana Code of Criminal Procedure describes four categories of prejudicial remarks which mandate a mistrial when one is requested. The reference to the confessions in this case, although a clear violation of Article 767, does not fall into any of the four categories.
State v. Whitmore, 353 So.2d 1286, 1289 (La.1977). Where the alleged prejudicial remark does not fall into one of the categories outlined in La.C.Cr.P. art. 770, La.C. *1190 Cr.P. art. 771 requires the trial judge to admonish the jury to disregard the remark if either of the parties requests it. No such request was made. In the absence of a request, the trial judge need not admonish the jury. State v. Morgan, 454 So.2d 364 (La.App. 4th Cir.1984).
This assignment of error has no merit.
ASSIGNMENT OF ERROR # 2
Humphrey sought to question J.M. at trial about any gynecological examinations between the rapes and the time of trial, arguing that such examinations would be relevant to show absence of tearing, rupture or scarring of the vaginal wall. He alleges these would be present if he had engaged in sexual intercourse with a girl so young; but he has presented no medical testimony to support the theory that examinations made years after a rape would reveal physical evidence, or lack of it, of rape. Furthermore, J.M. testified that she had no such examination following the rape. The state argues that any such examinations would not be probative of the issue, since the testimony established a very gradual penetration of the vagina, starting with the introduction of a finger very slightly and progressing over time to intercourse, with both J.M.'s vagina and Humphrey's penis well lubricated. Further, the state argues, Humphrey failed to establish any foundation for this evidence by questioning J.M. about any damage or bleeding suffered as a result of this sexual intercourse.
"Clearly, where highly relevant evidence is available, the State's need to protect the victim from embarrassing cross-examination must be weighed against the probative value of the evidence...." State v. Vaughn, 448 So.2d 1260, 1267 (La.1983) (on rehearing). Even assuming that Humphrey has shown the relevance of the information he has attempted to elicit, and we do not believe that he has, its probative value does not outweigh its prejudicial effect. State v. Ledet, 337 So.2d 1126 (La. 1976).
This assignment of error has no merit.
ASSIGNMENT OF ERROR # 3
Humphrey sought to elicit information concerning J.M.'s drug use and mental state at the time of the crime and of the accusation, allegedly seeking an explanation of why she might have made a baseless accusation. As part of that attempt, he subpoenaed J.M.'s records from River Oaks Hospital. The trial judge reviewed the River Oaks records in camera and ruled that nothing in the records was probative.
He refused to permit Humphrey to question J.M. or her mother about these issues. J.M. did admit that her hospitalization was for alcohol abuse, behavioral problems, and depression; and she stated that her doctors did not prescribe any medication for her. Humphrey now argues that this line of questioning relates to J.M.'s credibility as well as her ability to perceive and remember.
"The credibility of a witness may be attacked generally, by showing that his general reputation for truth or for moral character is bad, or it may be attacked only in so far as his credibility in the case on trial is concerned." La.R.S. 15:490. "When the general credibility is attacked, the inquiry must be limited to general reputation, and can not go into particular acts, vices or courses of conduct." La.R.S. 15:491. "No other investigation into the character of a witness is permissible except such as affects his credibility." La.R.S. 15:483. "Each side has the right to impeach the testimony and the credibility of every witness sworn on behalf of the other side." La.R.S. 15:486. "It is not competent to impeach a witness as to collateral facts or irrelevant matter." La.R.S. 15:494.
There is no evidence to show that J.M. had a substance abuse problem or that there was anything unusual about her mental state during the years she was being sexually abused by Humphrey. Consequently, any information about those years is irrelevant to any issue before the jury. Furthermore, it does not relate to J.M.'s credibility at the time of trial, since there was no contention that J.M. was under the influence of alcohol or drugs during her *1191 testimony nor showing that she had any mental illness that would color her testimony.
Any evidence designed to impeach J.M.'s credibility must be limited to her general reputation for truth and moral character and cannot go into individual acts, vices, or courses of conduct. State v. Trosclair, 350 So.2d 1164 (La.1977). We believe the trial judge was correct in excluding this testimony from evidence.
This assignment of error has no merit.
ASSIGNMENT OF ERROR # 4
Humphrey complains that the jury charge given on reasonable doubt was constitutionally defective in that it provided the jury with a misleading definition of reasonable doubt and forbade the jury from considering lack of evidence.
The Code of Criminal Procedure, in art. 804, furnishes instruction to the trial judge on this issue:
A. In all cases the court shall charge the jury that:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required to, define "the presumption of innocence" or "reasonable doubt" or give any other or further charge upon the same than that contained in this article.
The Fourth Circuit has held that, while it is preferable for the trial judge to simply read art. 804 to the jury, he is authorized by this article to go further and define "reasonable doubt." State v. Rodney, 459 So.2d 669 (La.App.1984).
The trial judge in the instant case did go further and gave the jury a lengthy definition of reasonable doubt along with a paraphrase of the elements of art. 804:
... Although you are the sole judges of the law and the facts on the question of guilt or innocence, you have the duty to accept and apply the law as given by the Court. You must decide the facts from the testimony and other evidence and apply the law to those facts in reaching your verdict.
. . . .
The defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt....
The burden is upon the State to prove the defendant's guilt beyond a reasonable doubt. In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty.
. . . .
If you entertain any reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your sworn duty to give him the benefit of that doubt and return a verdict of acquittal. Even where the evidence demonstrates a probability of guilt, yet if it does not establish it beyond a reasonable doubt, you must acquit the accused. This doubt must be a reasonable one, that is, one found [sic] upon a real, tangible, substantial basis, and not upon mere caprice, fancy or conjecture. It must be such a doubt it would give rise to a grave uncertainty, raised in your minds by reason of the unsatisfactory character of the evidence; one that would make you feel that you had not an abiding conviction to a moral certain [sic] of the defendant's guilt. If, after giving a fair and impartial consideration to all of the facts in the case you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the defendant's guilt, this would give rise to such *1192 a reasonable doubt as would justify you in rendering a verdict of not guilty.
The prosecution must establish guilt by legal and sufficient evidence beyond a reasonable doubt, but the rule does not go further and require a preponderance of testimony. It is incumbent upon the State to prove the offense charged, or legally included in the indictment, to your satisfaction and beyond a reasonable doubt. It should be an actual or substantial doubt. It is such a doubt as a reasonable man would seriously entertain. It is a serious doubt for which you could give good reason.
. . . .
You are prohibited by law in your oath from going beyond the evidence to seek for doubts upon which to acquit the defendant, but must confine yourselves strictly to a dispassionate consideration of the testimony given upon the trial. You must not resort to any extraneous facts or circumstances in reaching your verdict. That is, you must not go beyond the evidence to find facts or circumstances creating doubts, but must restrict yourselves to the evidence that you heard on the trial of this case or on the lack of evidence.
You are exclusive judges of the facts. You are to find from the evidence which facts have been proved and which facts have not been proved....
You must determine the facts only from the evidence presented....
The case of State v. McDaniel, 410 So.2d 754 (La.1982), raises doubts about the inclusion of the phrases "morally uncertain" and "great uncertainty"; and similar phrases were used by the trial judge. Nevertheless, similar language has been held not to be error in State v. Taylor, 410 So.2d 224 (La.1982) ("grave uncertainty" and "moral certainty"); State v. Augustine, 482 So.2d 150 (La.App. 4th Cir.1986), on resentencing 526 So.2d 442 (1988) ("grave uncertainty" and "moral certainty"); and State v. Rodney, supra ("moral certainty").
The trial judge's charge also includes language which correctly informs the jury that it may consider both evidence and the lack of it, another requirement in State v. McDaniel, supra.
This jury charge, taken as a whole, is not misleading and does not constitute error sufficient to warrant reversal. This assignment of error has no merit.
We affirm Elmo Humphrey's conviction of aggravated rape.
AFFIRMED.